[No. 6350. Decided November 14, 1906.]

WILLIAM J. THOMSON, *Appellant* v. UNITED STATES
FIDELITY & GUARANTY COMPANY, *Respondent.*[1]

INSURANCE—CHANGE OF RISK—PROVISIONS OF POLICY—CONSTRUC-
TION—LEASE UNDER BURGLARY INSURANCE. A policy of insurance
against loss by burglary while the premises are actually occupied
by the assured, providing that the same shall be void if the risks
are changed without the written consent of the company, is not
avoided by reason of the fact that the owner leased the premises
without such written consent, where a further clause in the policy
declares that it shall be void in case the premises are left unoc-
cupied for a period exceeding six months without the written con-
sent of the company, in view of the rule that inconsistent clauses
shall be construed most strongly in favor of the assured.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered December 23, 1905, upon find-
ings in favor of the defendant, after a trial on the merits
before the court without a jury, in an action to recover on
an insurance policy. Reversed.

*J. W. Rayburn* and *Wm. H. Brinker*, for appellant.

*Walter S. Fulton*, for respondent.

ROOT, J.—This was an action to recover on an insurance
policy, issued by respondent to appellant, against loss of
property by theft, larceny or burglary. From a judgment
in favor of defendant, this appeal is prosecuted. On the
18th of December, 1904, the policy sued upon was issued to
appellant, covering, for the period of one year, various items
of personal property contained in appellant's home in Se-
attle. On or about the 1st day of May, 1905, part of the
property thus insured was stolen from said house. Some
four months prior to the time of the theft, the appellant,
without the written or other consent of defendant, and with-
out its knowledge, leased the house to tenants who occupied it

[1]Reported in 87 Pac. 486.

at the time of the theft, said insured property being stored in the attic of the building. 'Said policy contained the following provisions:

"For direct loss by burglary, theft or larceny of any of the property described in the schedule hereinafter given and constituted to be insured hereunder occasioned by its felonious abstraction from the interior of the house, building, apartments, room or rooms, actually occupied by assured, and described in said schedule, and hereinafter called the premises, by any domestic, servant or employee of the assured, or by any person or persons, except the assured, and for direct loss by damage to said property and to the said premises caused by burglars and thieves.'

"This policy shall be void if the conditions or circumstances of the risk are changed without the written consent of the company, or if the assured attempts in any way to defraud the company, or if the policy is assigned without the written consent of the company."

Respondent contends, and the trial court upheld the contention, that the leasing of the premises by the assured without respondent's consent constituted a change in the "conditions and circumstances" of the risk which rendered the policy void under and by virtue of the provisions just quoted. Appellant meets this contention by a reliance upon the following provision in said policy:

"If the premises are left without an occupant for a period exceeding six consecutive months, unless a written permit for such nonoccupancy, signed by an executive officer of the company, is endorsed upon or attached to the policy,"

the defendant should not be liable for loss or damage. It will be observed that this provision is absolutely inconsistent with the others above quoted. Those portions implied that the property was to be insured while in a building *actually occupied by assured*, and expressly stated that a change in "conditions or circumstances of the risk" should render the policy void. But the provision relied upon by appellant plainly contemplates that the assured might change the conditions

and circumstances by leaving the premises without an occupant for a period not exceeding six months. If the assured was authorized to leave the building for that period without any occupant, he certainly would be justified in leaving it with occupants, unless the latter were people of a character endangering the risk. Nothing of this kind appears in the case, and we cannot presume that the tenants were lawless or unreliable people. As the sections quoted are irreconcilable, the question is presented as to which shall control.

Adjudicated cases upon questions of burglary insurance appear to be scarce, in so far as they throw any light upon the questions here involved; but it would seem that policies of this character are analogous to those of life, accident, and fire insurance. As to such policies, the rule is well established that, where by reason of ambiguity, inconsistency and uncertainty, either of two divergent constructions might find support, a policy will be given that interpretation which is the more favorable to the assured. As the instrument is prepared by the insurance company, it is presumed that appropriate language has been employed to safeguard its interests; and the rule is particularly applicable in determining the effect to be given clauses and provisions which are more or less obscure, and which are claimed to limit the company's obligations or reserve exceptions to its general liability. The section of the policy, relied upon by appellant, authorizing him to leave the premises for a period not exceeding six months without the "written permit," being at variance with the provisions as to the house being "actually occupied by assured," and as to the change in "conditions or circumstances . . . without the written consent," and these latter provisions being intended to limit the liability of the company, we must hold, under the accepted rule applicable to insurance contracts, that the appellant herein had the right to leave the premises for a period not exceeding six consecutive months without the consent of the company;

and as the condition of the premises with tenants, not shown to be criminal or suspicious characters, would of necessity afford more protection to the insured property than if the house were left entirely without occupants, we think no violation of the policy on the part of appellant has been shown.

In the case of *Starr v. Aetna Life Ins. Co.*, 41 Wash. 199, 83 Pac. 113, this court said:

"It is the established and universal law that insurance policies are to be construed in favor of the insured, and most strongly against insurance companies. This is a reasonable rule, considering the fact that these policies are prepared by men who are learned in the law and trained in preparing contracts of this kind, and who have studied the legal effects of all the multifarious provisions in the ordinary insurance policies, whether accident or life."

In the case of *Equitable Acc. Ins. Co. v. Osborn*, 90 Ala. 201, 9 South. 869, 13 L. R. A. 267, the supreme court of Alabama employed the following language:

"Exceptions of this kind are construed most strongly against the insurer, and liberally in favor of the insured. This is now the settled rule for construing all kinds of insurance policies, rendered necessary especially in modern times to circumvent the ingenuity of the insurance companies in so framing contracts of this kind as to make the exceptions unfairly devour the whole policy."

See, also, *Rumsey v. Phoenix Ins. Co.*, 1 Fed. 396: *Crane v. City Ins. Co.*, 3 Fed. 558; *American Credit Indemnity Co. v. Wood*, 73 Fed. 81; *Olson v. St. Paul Ins. Co.*, 39 Minn. 432; *Boon v. Aetna Ins. Co.*, 40 Conn. 575; *Moore v. Phoenix Ins. Co.* [64 N. H. 140], 10 Am. St. 390 and note: 1 Cooley, Brief on Ins., pp. 632-4; 2 Id., pp. 1723, 1743-6.

The judgment of the honorable superior court is reversed, and the cause remanded with directions to enter judgment in favor of appellant for the value of the goods as found by the trial court, together with legal interest and costs.

DUNBAR, CROW, FULLERTON, and HADLEY, JJ., concur.

MOUNT, C. J. and RUDKIN, J., took no part.