A08A1391. MORRILL et al. v. COTTON STATES MUTUAL
INSURANCE COMPANY.

(666 SE2d 582)

BLACKBURN, Presiding Judge.

Jennifer Morrill, individually and as executrix of her father's estate, appeals the grant of summary judgment to Cotton States Mutual Insurance Company ("Cotton States") on claims arising from the father's property insurance policy. Specifically, Morrill contends that the trial court erred in enforcing a contractual time limit to her right to file suit on the insurance policy, because (1) the one-year time limit violates insurance regulations, (2) Cotton States waived enforcement of the policy's time limit, and (3) even if the one-year limit is enforceable, it does not apply to the specific claims Morrill raised. Because the contractual time limit was enforceable, applicable, and not otherwise waived, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1]

So viewed, the record shows that in February 2005, Morrill's father died as a result of an apparently self-inflicted gunshot wound to the chest; on that same day his house was totally destroyed by a fire. In March 2005, Morrill telephoned Cotton States to inquire about her father's homeowner's insurance coverage, stating that she did not have a copy of any policy. Cotton States requested copies of the death certificate and Morrill's executrix papers. In April and May 2005, Morrill entered into the probate process, and in mid-May she telephoned Cotton States again, which told her that the insurance policy included coverage to pay off the mortgage on the house plus $100,000 in personal property coverage. In June 2005, Cotton States telephoned Morrill to request the letters testamentary, death certificate, and deed to the house in order to "request authority" to settle the claim. In July 2005, Cotton States paid off the mortgage but informed Morrill by telephone that the company had not yet determined whether the fire was intentional, which could preclude compensation for the estate's personal property losses. In August 2005, Cotton States told Morrill by telephone that it had determined that the fire was arson and that it would deny payment for personal property losses. Also in August, Cotton States's adjuster sent Morrill a copy of the insurance policy, with a cover letter confirming his view that the fire was arson based on a conversation with the "State[']s Fire Marshal's office."

In August 2006, Katie Reagan (the ex-wife), who had been living at the burned house, sued the estate (naming Morrill personally and as executrix) to recover Reagan's lost personal property, alleging that the father deliberately set the fire. Morrill hired an attorney to represent herself and the estate, and in early September 2006, the attorney notified Cotton States of the suit and filed an answer. Later that month, Cotton States responded with a reservation of rights letter stating that it believed the personal property loss was not covered due to the alleged arson. The letter also informed Morrill that Cotton States had retained counsel to defend her as executrix and that Cotton States was considering filing a declaratory judgment action to determine its liability for personal property losses.

In October 2006, Cotton States filed a declaratory judgment action seeking a ruling on its obligations under the policy with respect to Reagan's personal property claim and legal representation of Morrill personally. Morrill's personal attorney filed an answer with a counterclaim for breach of contract and bad faith, alleging, inter alia, that Cotton States wrongfully denied coverage for the

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

estate's personal property loss. Cotton States ultimately settled Reagan's claim and, in July 2007, dismissed its declaratory action and moved for summary judgment on Morrill's counterclaims.

Following a hearing, the trial court granted the motion on the ground that Morrill's counterclaims did not comply with a time limit in the policy restricting the time for filing any action to recover for property loss under the policy to within one year from the loss. (Morrill's counterclaim was filed approximately eighteen months after the fire.) Morrill now appeals that ruling.

1. Morrill contends that the trial court erred in enforcing the one-year time limit because it violates an insurance regulation in Georgia. We disagree because, due to the date of the policy here, the relevant regulation is not applicable.

The policy contains the following provision: "Suits Against Us [Cotton States]. No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss." Morrill relies on a regulation promulgated by the insurance commissioner which establishes minimum standards for fire insurance policies. See OCGA § 33-32-1 ("[n]o policy of fire insurance covering property located in this state shall be made, issued, or delivered unless it conforms as to all provisions and the sequence of the standard or uniform form prescribed by the Commissioner . . ."). Morrill asserts that the policy's one-year time limit is unenforceable because the current regulations require a minimum two-year period in which to bring suit on a policy. See Ga. Comp. R. & Regs. rr. 120-2-19-.01 and 120-2-20-.02.

However, Morrill ignores the fact that the insurance commissioner's notice of rulemaking states that the regulation requiring a two-year period is only "effective for policies written or renewed on or after June 20, 2006." Prior to that time, the minimum fire insurance standards allowed a one-year time limitation. See, e.g., former Ga. Comp. R. & Regs. r. 120-2-19-.01 (historical version effective 1965 and stating "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity . . . unless commenced within *twelve months* next after inception of the loss") (emphasis supplied). As the father's insurance policy was last renewed in June 2004, i.e., before June 20, 2006, the updated insurance regulation does not apply to the policy here.

Furthermore, in previous cases addressing the enforceability of a one-year time limitation, "[t]his court has decided that an insurance policy provision placing a one-year limitation upon the right of the policyholder to sue the insurer is valid and enforceable. . . ."

*McCoury v. Allstate Ins. Co.*[2] See *Allstate Ins. Co. v. Sutton;*[3] *Suntrust Mtg. v. Ga. Farm &c. Ins. Co.;*[4] *Darnell v. Fireman's Fund Ins. Co.*[5] As the provision here is not prohibited by applicable insurance regulations, we decline to depart from this well-established precedent finding contractual limitation provisions such as the one here valid and enforceable.

2. Morrill asserts that Cotton States waived enforcement of the policy provision. We disagree.

(a) *Waiver by conduct during negotiation.* Morrill correctly notes that

> an insurer can be held to have waived a limitation period when its investigations, negotiations, or assurances up to and past the period of limitation led the insured to believe the limitation would not apply. . . . It is only where the insurer's conduct reasonably leads the insured to believe that a strict compliance with the limitation provision would not be insisted upon.

(Citation and punctuation omitted.) *Appleby v. Merastar Ins. Co.*[6]

Here, Cotton States did initially inform Morrill of the policy's potential coverage for paying off the mortgage and loss of personal property. However, as stated in Morrill's own affidavit, Cotton States told her, five months after the fire, that it "was still deciding whether the fire was 'intentional,' . . . [and that] Cotton States needed to make this determination before deciding whether to pay for the personal property." Less than one month later, Cotton States informed Morrill that it viewed the fire as a result of arson and would deny any claim by the estate for loss of personal property. Cotton States did at that time (six months after the fire, and six months before the policy's deadline for filing suit) provide Morrill with a copy of the policy.

We view this case to be similar to *Ga. Farm &c. Ins. Co. v. Nolan,*[7] where an agent for the insurer informed the claimant within four months of a fire that the company did not intend to pay the claim arising from the fire. There, we found that the facts did not "show that negotiations for a settlement [had] led the insured to believe that the claim would be paid by the insurer, without a suit,"

---

[2] *McCoury v. Allstate Ins. Co.*, 254 Ga. App. 27, 28 (1) (561 SE2d 169) (2002).

[3] *Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154, 157 (1) (658 SE2d 909) (2008).

[4] *Suntrust Mtg. v. Ga. Farm &c. Ins. Co.*, 203 Ga. App. 40, 41 (416 SE2d 322) (1992).

[5] *Darnell v. Fireman's Fund Ins. Co.*, 115 Ga. App. 367 (154 SE2d 741) (1967).

[6] *Appleby v. Merastar Ins. Co.*, 223 Ga. App. 463, 464 (477 SE2d 887) (1996).

[7] *Ga. Farm &c. Ins. Co. v. Nolan*, 180 Ga. App. 28, 29 (348 SE2d 554) (1986).

and we held that the insurance company was entitled to summary judgment based on the policy's time limitation. Id. Consistent with that holding, we note that

> settlement negotiations do not always give rise to a jury question on whether the policyholder was led to believe that he need not file suit, even if they continue throughout the policy's limitation period. Mere negotiation for settlement, unsuccessfully accomplished, is not that type of conduct designed to lull the claimant into a false sense of security so as to constitute a waiver of the limitation defense.

(Punctuation and footnote omitted.) *Allstate Ins. Co. v. Sutton*, supra, 290 Ga. App. at 156-157 (1). Accordingly, in light of Cotton States's consistent refusal, within five months of the fire, to pay any claim by the estate for personal property loss, and in light of the absence of any evidence that Cotton States subsequently indicated it would pay the estate's personal property loss claim, we find no waiver on the part of Cotton States as to the policy's time limitation.[8]

(b) *Waiver during litigation.* Morrill further contends that the contractual defense asserted in Cotton States's summary judgment motion was waived by Cotton States's failure to (i) raise the defense as an affirmative defense in an answer, or (ii) enumerate the issue in the pre-trial order. However, as provided by OCGA § 9-11-12 (a), a "counterclaim [such as Morrill's] shall not require an answer, unless one is required by order of the court, and shall automatically stand denied." (The court did not order Cotton States to file an answer here.) Further, as provided by OCGA § 9-11-12 (b), "[i]f a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, he may assert at the trial any defense in law or fact to that claim for relief." Accordingly, Cotton States's summary judgment motion was not an improper or untimely method for raising the contractual defense. Further, as the summary judgment motion was filed prior to and explicitly referenced in the pre-trial order, we find no merit to Morrill's argument that the pre-trial order somehow precluded Cotton States's reliance on the contractual defense raised in its summary judgment motion.

3. Relying on the terms of the policy, Morrill contends that, even if the one-year limit is enforceable, it does not apply to the specific claims she raised below. For the reasons that follow, we discern no error.

The policy has two types of coverage: property loss (Section I)

---

[8] We note that Cotton States's representation of the estate in the Reagan action did not operate as a subsequent waiver, as Cotton States reserved its rights in writing.

264

and liability (Section II). Each section has a different clause governing "Suits Against" Cotton States. In Section I (governing property losses), the clause contains the one-year time limitation for bringing an action. However, in Section II (governing liability to third parties), the clause omits the time limit and simply requires compliance with the policy provisions. Therefore, to the extent a suit seeks compensation for property loss, it is barred by the time limit; however, to the extent a suit seeks defense against and indemnification for liability to a third party such as Reagan here, the policy contains no corresponding time limit.

Here, Cotton States settled the Reagan claim against the estate; only Morrill's counterclaim remains. Morrill's counterclaim seeks damages for (i) breach of contract based on Cotton States's alleged denial of coverage for the estate's personal property loss, (ii) bad faith based on the denial of coverage and Cotton States's filing of the declaratory judgment action, and (iii) attorney fees based on Cotton States's alleged stubborn litigiousness under OCGA § 13-6-11. In light of our holdings in Divisions 1 and 2, the counterclaims based on Cotton States's failure to pay for the estate's personal property loss are barred by the one-year time limit applicable to property loss. However, to the extent the counterclaim seeks damages based on Cotton States's handling of the third-party claim against the estate, such claims would not fall within the scope of the policy's one-year time limit (in Section I), because they are governed by Section II, which does not have a corresponding one-year time limit.

Nevertheless, we note that based on the record before us, there is no evidence of bad faith or stubborn litigiousness on the part of Cotton States with respect to its defense of the Reagan claim. Within 20 days of receiving notice of the suit, Cotton States responded to Morrill and hired an outside law firm to defend against the Reagan complaint. That Cotton States filed a declaratory judgment action is not evidence of bad faith or stubborn litigiousness, especially in light of the facts of this case which included the apparent suicide and suspected arson. "The law is well settled that an insurer, uncertain how to handle a claim made on a policy, may enter upon a defense under a reservation of rights and then seek a declaratory judgment." (Punctuation and emphasis omitted.) *Morgan v. Guaranty Nat. Cos.*[9] That is what Cotton States did here, and, even after having done so, Cotton States ultimately settled the Reagan claim against the estate and dismissed its own declaratory judgment action. Compare *Leader*

---

[9] *Morgan v. Guaranty Nat. Cos.*, 268 Ga. 343, 344 (489 SE2d 803) (1997).

*Nat. Ins. Co. v. Kemp & Son, Inc.*[10] (finding question of bad faith where insurance company "withdrew from defending [insured] in the underlying tort actions before final adjudication of the pending declaratory judgment action"). Therefore, based on the record before us, we affirm the trial court's judgment.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JULY 24, 2008 —
RECONSIDERATION DENIED AUGUST 8, 2008 — 

*David J. Hungeling*, for appellants.

*Broughton & Fernandez, Allen L. Broughton, Brian C. McCarthy*, for appellee.

*Timothy P. Law*, amicus curiae.

---

[10] *Leader Nat. Ins. Co. v. Kemp & Son, Inc.*, 189 Ga. App. 115, 118 (4) (375 SE2d 231) (1988).